**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cynthia W. Taylor and Fredrick C. Taylor, wife and husband,<br><br>        Plaintiffs,<br><br>vs.<br><br>USAA Casualty Insurance Company, a foreign insurer; John Does I-V; Jane Does I-V; Black Partnerships I-V; White Corporations I-V,<br><br>        Defendants. | No. CV-09-02117-PHX-NVW<br><br>**ORDER** |

Before the Court is Defendant USAA Casualty Insurance Company's Motion for Partial Summary Judgment. (Doc. 50.) For the reasons stated below, the Court will grant the motion.

**I.    Preliminary Matters**

The District of Arizona Local Rules require the party moving for summary judgment to submit a separate statement of facts. LRCiv. 56.1(a). The Local Rules then allow the opposing party, in its response, to submit a separate statement admitting or denying the moving party's facts and specifying any additional facts necessary to resolve the motion. LRCiv. 56.1(b). The Local Rules, however, do not permit the moving party to submit an additional statement of supplemental facts in its reply. *See Allstate Ins. Co. v. Ford Motor*

1  *Co.*, No. CV-08-2276-PHX-NVW, 2010 WL 1654145, at *10 (D. Ariz. Apr. 21, 2010)
2  ("While LRCiv 56.1(d) permits the moving party to file a 'reply memorandum,' it does not
3  permit an additional separate statement of facts.").

4      Here, Defendant USAA Casualty Insurance Company ("USAA") submitted, along
5  with its reply, a "Supplement Statement of Facts in Support of Motion for Partial Summary
6  Judgment." (Doc. 67.) In its discretion, the Court allowed Plaintiffs Cynthia and Frederick
7  Taylor ("Taylors") to file a surreply as opposed to striking Defendant's supplemental
8  statement of facts. (Doc. 69.) The Court has thus considered USAA's supplement statement
9  of facts, as well as the Taylors' surreply, in deciding USAA's pending motion for partial
10 summary judgment.

11 **II.    Legal Standard**

12     The Court should grant summary judgment if the evidence shows there is no genuine
13 dispute about any material fact and when the moving party is entitled to judgment as a matter
14 of law. Fed. R. Civ. P. 56(c). The moving party has the burden of showing that material
15 facts are not genuinely disputed. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
16 To meet this burden, the moving party must point out the lack of evidence supporting the
17 nonmoving party's claim, but need not produce evidence negating that claim. *Id.* at 325.

18     When the moving party has carried its burden under Rule 56(c), the nonmoving party
19 must show that there are genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.*,
20 477 U.S. 242, 250 (1986). A material fact is one that might affect the outcome of the suit
21 under the governing law. *Id.* at 248. A factual issue is genuine "if the evidence is such that
22 a reasonable jury could return a verdict for the nonmoving party." *Id*. The nonmoving party
23 must produce evidence to support its claim or defense by more than simply showing "there
24 is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith*
25 *Radio Corp.*, 475 U.S. 574, 586 (1986). The Court must view the evidence in the light most
26 favorable to the nonmoving party, must not assess its credibility, and must draw all justifiable
27 inferences from it in favor of the nonmoving party. *Anderson*, 477 U.S. at 255. Where the
28

1 record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving
2 party, there is no genuine issue of material fact for trial. *Matsushita*, 475 U.S. at 586.

**III. Facts**

USAA issued the Taylors an automobile insurance policy with coverage for bodily injury liability, uninsured motorists, underinsured motorists, and medical payments ("MedPay"). Each type of coverage had a $100,000 limit per person. The MedPay policy provided for reimbursement of "the reasonable fee for medically necessary and appropriate medical services ... because of [injury] caused by an auto accident, sustained by a covered person." Under the Taylors' policy, the reasonable fee for medical treatment is determined to be the least costly of either the amount actually billed by the provider, the amount negotiated between the provider and USAA, or the "charge determined by a statistically valid database that is designed to reflect charges for the same or comparable services or supplies in the same or similar geographic region."

USAA used Auto Injury Solutions, an independent company, to review MedPay claims to 1) determine whether medical expenses were billed for treatment actually provided, 2) determine whether the treatment was reasonable and necessary, and 3) to set a reasonable fee for the medical treatments. Auto Injury Solutions in turn used Ingenix, another independent company, to assist in making these recommendations. Ingenix relied on the MDR database, which compiled actual provider billing charges in various geographic areas to determine the reasonableness of fees and treatments. While the Taylors' expert witness, Mr. Cass, acknowledges it is reasonable for USAA to rely upon a statistically valid database to determine reasonable provider charges, he contends that the MDR database is statistically invalid. However, at his deposition Mr. Cass could not recall many details regarding the MDR database.[1] Mr. Cass also did not know whether USAA attempted to evaluate the MDR

---

[1] For example, Mr. Cass could not recall details of how the MDR database worked, has not previously testified in litigation regarding the MDR database, has not performed any consulting work regarding the MDR database, has not subscribed to the MDR database or

- 3 -

1  database or whether USAA had any knowledge of MDR's purported statistical invalidity.
2  Although it used Auto Injury Solutions, USAA retained final authority over ultimate
3  reimbursement decisions.

4  On October 27, 2005, Cynthia Taylor was injured in an automobile accident. The
5  other driver, who was not insured, was at fault for the accident. Mrs. Taylor notified USAA
6  of the accident the day it occurred. USAA paid the Taylors the $100,000 limit of the
7  uninsured motorist coverage and the value of Mrs. Taylor's vehicle under the collision
8  coverage. USAA agreed not to include Mrs. Taylor's medical expenses within the uninsured
9  motorist coverage so that she could seek additional recovery under her MedPay coverage.
10 Although the Taylors' policy does not specifically list what information is required to process
11 reimbursement of MedPay claims, Mrs. Taylor was advised on the date of the accident of her
12 policy coverage and that she would need to send in certain information, such as medical bills
13 and records and diagnostic and billing codes, in order for USAA to reimburse claims under
14 her MedPay policy.

15 Mrs. Taylor was treated by her primary care physician and various specialists for
16 injuries stemming from the accident. The Taylors submitted various medical bills to USAA
17 for reimbursement under the MedPay coverage, which they claim totaled $86,379.51 for
18 medical treatment and $3,496.22 in prescription costs. The Taylors provided USAA with

---

spoken with any subscriber, and has not produced a statistical analysis of the MDR database. Mr. Cass bases his opinion on the validity of the MDR database largely on the June 15, 2006 report by Dr. Bernard Siskin on the MDR database's validity, although he also relied upon a Senate Committee report, articles regarding a New York attorney general investigation into the MDR database, and materials from another class action suit. Mr. Cass was unable to recall at his deposition Dr. Siskin's qualifications, the nature or methods of Dr. Siskin's analysis, and, although he recalled that Dr. Siskin's report was prepared in the context of litigation, he could not recall which party had commissioned the report. Finally, Mr. Cass does not know how many companies subscribed to the MDR database, is not aware of any insurance company that had discontinued its use of the MDR database because of Dr. Siskin's report, and does not know whether anyone at USAA had received or reviewed Dr. Siskin's report.

1  prescription receipts and a spreadsheet of costs prepared by Mr. Taylor. USAA has paid
2  $31,167.61 under the MedPay coverage. USAA did not reimburse $2,293.47 because the
3  providers' charges exceeded USAA's definition of a reasonable fee. However, the providers
4  largely accepted the reduced payments without billing the balance of unpaid fees to the
5  Taylors. The Taylors were only billed $17.00 by a medical provider as the balance of unpaid
6  fees from USAA, an amount which they did not ultimately pay. The Taylors have not been
7  billed any other amount due to USAA's failure to fully reimburse any provider. USAA paid
8  the provider's full billed amount for more than half of the reimbursed MedPay bills, and paid
9  a rate, which was lower than the amount billed but accepted by the provider, on a few other
10 claims.
11       Some of the bills the Taylors submitted were not reimbursed because they were not
12 submitted with office notes, diagnostic codes or billing information, the treatment was not
13 necessary or reasonable as a result of the accident, or the claim was a duplicate of a previous
14 claim for reimbursement. The Taylors assert that they were unable to obtain the information
15 USAA requested in order to reimburse certain claims. The Taylors also provided USAA
16 with an authorization for the release of medical information and documentation. Mr. Cass
17 acknowledged that it was not unreasonable for USAA to request diagnostic and procedure
18 codes and that requesting such codes was "normal, natural and standard in the industry."
19 When USAA was missing information needed to process claims, it sent a letter to the
20 treatment provider and the insured requesting the information it needed. USAA sent multiple
21 requests for information, explanations of reimbursement, and documentation requests in
22 order to obtain information that was needed to make a reimbursement decision.
23       Around June 2006, USAA submitted some of Mrs. Taylor's physical therapy bills and
24 records to Auto Injury Solutions, which did not recommend continued physical therapy.
25 Accordingly, USAA discontinued reimbursement payments for some of Mrs. Taylor's
26 physical therapy. In August 2006, Dr. Peter Kubitz conducted an independent medical
27 examination to review Mrs. Taylor's injuries and the treatment she had received for those
28

injuries. Dr. Kubitz found that all of Mrs. Taylor's treatment up to August 2006 had been medically reasonable and necessary. However, USAA did not reinstate the two months of denied reimbursements based on Auto Injury Solutions' recommendation. Although Dr. Kubitz indicated that he was not certain whether additional physical therapy would help Mrs. Taylor, USAA determined not to "suspend any of [Mrs. Taylor's] treatment." For multiple claims, Auto Injury Solutions recommended that Mrs. Taylor's treatment expenses were not medically reasonable and necessary and thus should not be reimbursed. Nonetheless, USAA reviewed Auto Injury Solutions recommendations, overrode its determinations, and paid Mrs. Taylor's medical providers.

At no time did Mrs. Taylor appeal or seek reconsideration of any of USAA's reductions made due to reasonable fee determinations, although she claims she "would become hysterical" when she discovered that USAA was not reimbursing all of the submitted medical bills. The Taylors also raise concerns with various aspects of their claims handling: 1) multiple adjusters handled the Taylors' claims files, 2) the Taylors sometimes experienced difficulty reaching and communicating with the adjusters, and 3) the Taylors received communications from USAA directly at their home, instead of through their attorney.

**IV.  Legal Analysis**

Based on the foregoing facts, the Taylors' complaint alleges two causes of action: 1) breach of contract and 2) bad faith. The Taylors seek actual, compensatory, consequential, and punitive damages. USAA moves for partial summary judgment with respect to the bad faith and punitive damages claims.

**A.  Bad Faith**

Under Arizona law, insurance contracts include an implied covenant of good faith and fair dealing that requires the parties to the contract to refrain from any conduct that would impair the benefits or rights expected from the contractual relationship. *See Rawlings v. Apodaca*, 151 Ariz. 149, 154, 726 P.2d 565, 570 (1986). When the insurer "'intentionally denies, fails to process or pay a claim without a reasonable basis,'" it breaches this implied

- 6 -

covenant and is liable for the tort of bad faith. *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 238, 995 P.2d 276, 280 (2000) (quoting *Noble v. Nat'l Life Ins. Co.,* 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981)).

In order to establish a claim for bad faith against an insurer, a plaintiff must "show the absence of a reasonable basis for denying benefits of the policy and the [insurer's] knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Noble,* 128 Ariz. at 190, 624 P.2d at 868 (internal citation omitted). Arizona thus employs a two-part test for determining whether an insurer has breached the covenant of good faith and fair dealing: the insurer must have objectively "act[ed] unreasonably towards its insured" and subjectively "act[ed] knowingly or with reckless disregard as to the reasonableness of its actions." *Clearwater v. State Farm Mut. Auto. Ins. Co.*, 164 Ariz. 256, 260, 92 P.2d 719, 723 (1990). It is not enough that an insurer acts in an objectively unreasonable manner; "[s]ome form of *consciously* unreasonable conduct" by the insurer is required for a bad faith action. *Trus Joist Corp. v. Safeco Ins. Co. of Am.*, 153 Ariz. 95, 104, 735 P.2d 125, 134 (Ariz. Ct. App. 1986) (emphasis added).

The Taylors allege that USAA acted unreasonably because 1) it was unfair for USAA to fail to process claims that were submitted without certain required information and that USAA did not do enough to obtain that missing information; 2) USAA denied claims on the basis that the treatment was unrelated to Mrs. Taylor's injuries or denied claims as duplicates which were not actually duplicates; 3) USAA relied on an allegedly statistically invalid database in making calculations about the reasonable medical expenses and treatments claimed; and 4) the Taylors had difficulty communicating with their insurance agents and the agent assigned to their case changed several times. The Taylors further allege that USAA had subjective knowledge that it acted unreasonably or acted with reckless disregard to whether its actions were reasonable because 1) claims have been submitted for years and have not yet been processed; 2) USAA's informational requirements for reimbursement were pretextual; and 3) USAA's used Ingenix and the purportedly invalid MDR database without

- 7 -

1 rigorous independent review.

2       The Taylors have not established facts to meet either prong of the bad faith test: there
3 is no genuine issue of material fact as to whether any of USAA's actions were objectively
4 unreasonable or that USAA subjectively intended to unreasonably deny the Taylors' claims.
5 First, the Taylors have cited no authority to show that it is a breach of USAA's duty to act
6 in good faith to not process claims that are submitted without all of the required information.
7 Indeed, the Taylors' own expert, Mr. Cass, acknowledged that it is objectively reasonable
8 and a standard industry practice for an insurance company to require certain information,
9 such as billing and diagnostic codes and/or receipts, before reimbursement claims can be
10 processed and paid. It is undisputed that USAA sent notices and requests for information to
11 the medical providers and to the Taylors, stating that it needed more information before
12 claims which were submitted with insufficient information could be reimbursed. Although
13 USAA had medical authorizations from the Taylors, it has not been established whether
14 submitting those authorizations with the requests for information would have resulted in
15 obtaining the missing information from the medical providers. *See Rawlings,* 151 Ariz. at
16 157, 726 P.2d at 573 ("As long as [the insurer] acts honestly, on adequate information and
17 does not place paramount importance on its own interests, it should not be held liable
18 because of a good faith mistake in performance or judgment.")

19       As to the claims USAA marked as duplicates, the Taylors have not identified any
20 particular claims that were wrongly denied on the basis of being a duplicate. While USAA
21 did deny claims multiple times as duplicates, it did so when the same claim was again
22 submitted with insufficient information, which is not objectively unreasonable. There is no
23 evidence before the Court that USAA processed and paid a claim, and then denied a different
24 claim that was properly filed with sufficient information as a duplicate of the properly
25 submitted claim. The Taylors' argument is thus essentially the same challenge to the
26 requirement that certain billing and diagnostic codes or receipts be submitted in order to
27 process claims, as discussed above. Similarly, the Taylors have not pointed to any specific

28

- 8 -

claims that were denied on the basis of being unrelated to Mrs. Taylor's injuries from her accident. Rather, the claims to which they refer that have not been reimbursed were submitted with insufficient information. Accordingly, no claims decision has been made; the claims have not been denied as unrelated to Mrs. Taylor's accident.

The Taylors have also argued that USAA's actions were consciously unreasonable because they used an independent company, Auto Injury Solutions, to review MedPay claims for reasonableness. Auto Injury Solutions relied on a third company, Ingenix, in generating their recommendations about whether certain claims should be reimbursed. In turn, Ingenix relied on a statistical database, MDR, that has been challenged as invalid. There is no evidence to support the allegation that USAA acted unreasonably by using a company that also utilized the MDR database, or that USAA had the necessary subjective knowledge or reckless disregard toward any purported unreasonableness of its actions because of its indirect use of the MDR database. First, the evidence presented does not establish that the MDR database is in fact invalid. Mr. Cass, the Taylors' expert, bases his claim that the MDR database is statistically invalid on: 1) a report by Dr. Siskin that was prepared for a plaintiff in litigation in another jurisdiction; 2) a report by the New York Attorney General's office, produced in 2009, which dealt with provider information in New York; and 3) a Senate Commerce Committee report, also produced in 2009. Without even reaching the questionable admissibility of these reports under Fed. R. Ev. 703, none of these reports relate to whether USAA's indirect use of MDR information to evaluate the Taylors' claims was unreasonable. Secondly, there is no evidence to support the conclusory assertion that USAA should have known of MDR's invalidity when it was handling the Taylors' claims. Even assuming that the database is invalid, there is no evidence of the subjective bad faith intention to harm that is required to make out a bad faith claim.[2] The Taylors have not shown

---

[2] The Taylors cite to *In re Marriage of Waldren*, 217 Ariz. 173, 171 P.3d 124 (2007), for the proposition that reports by the New York Attorney General's Office and the Senate Committee are "evidence of USAA's knowledge for many years of the statistical invalidity

- 9 -

1  any evidence that USAA knew about these reports regarding the statistical invalidity of the
2  database, nor otherwise had any reason to know of MDR's purported invalidity.

3  Finally, with respect to the Taylors' allegations about the general handling of their
4  claim, such as interactions with and changes in adjusters, these difficulties alone do not
5  support a charge of bad faith. *See Rawlings*, 151 Ariz. 149, 726 P.2d at 573 ("Insurance
6  companies . . . are far from perfect. Papers get lost, telephone messages misplaced and claims
7  ignored because paperwork was misfiled or improperly processed. Such isolated mischances
8  may result in a claim being unpaid or delayed. None of these mistakes will ordinarily
9  constitute a breach of the implied covenant of good faith and fair dealing, even though the
10 company may render itself liable for at least nominal damages for breach of contract in
11 failing to pay the claim.")  Because the Court finds none of USAA's other actions were so
12 unreasonable as to constitute bad faith, these allegations regarding the claims handling do not
13 cumulatively result in a finding that USAA acted in bad faith.

14 Even if any of USAA's actions described above could be considered objectively
15 unreasonable, the evidence does not show USAA had a subjective knowledge that it was
16 acting unreasonably toward the Taylors or with a reckless disregard to whether it was acting
17 unreasonably toward the Taylors. *See id.*. at 157, 726 P.2d at 573 (noting "negligence alone
18 is insufficient to impose liability on an insurer for the tort of bad faith"). Rather, USAA has
19 paid the full $100,000 limit of the Taylors' uninsured motorist coverage.  It has paid the
20 value of Mrs. Taylor's vehicle under the collision coverage.  It overrode the
21 recommendations of Auto Injury Solutions to not reimburse claims in several instances. It
22 has processed all of the MedPay claims that were properly submitted with all of the required
23 information.  It attempted to obtain the information needed to process claims that were not
24 properly submitted for reimbursement.  There is no evidence to support the claim that

25

26 of the database it has relied upon in adjusting its insured's claims." (Doc. 60.) However, *In
   re Waldren* deals with a court's ability to modify a spousal maintenance award in a divorce
27 decree; it is not relevant to showing that USAA had knowledge of MDR's alleged invalidity.

28
- 10 -

1 USAA's informational requirements for reimbursement were pretextual, or that it
2 intentionally and unreasonably delayed the processing of the Taylors' claims. On the record
3 before the Court, a reasonable jury could not find that USAA subjectively "act[ed]
4 knowingly or with reckless disregard as to the reasonableness of its actions." *Clearwater*,
5 164 Ariz. at 260, 92 P.2d at 723.

6 "Where an insurer acts reasonably, there can be no bad faith." *Trus Joist*, 153 Ariz.
7 at 104, 735 P.2d at 134. Having considered all of the Taylors' facts which allegedly show
8 bad faith on USAA's part, the Court finds that USAA actions were objectively reasonable.
9 Further, even if it could be claimed that USAA acted unreasonably, there is no evidence to
10 support the claim that USAA knew it was acting unreasonably or acted with a reckless
11 disregard to the reasonableness of its actions. Accordingly, USAA's motion for partial
12 summary judgment will be granted with respect to the bad faith claim.

### B. Punitive Damages

14 "[P]unitive damages are recoverable in a bad faith action when the defendant's
15 conduct is 'aggravated, outrageous, malicious or fraudulent' combined with an evil mind[.]"
16 *Linthicum v. Nat. Life Ins. Co.*, 150 Ariz. 326, 332, 723 P.2d 675, 681 (1986) (internal
17 citations omitted). However, punitive damages are not awardable in a bad faith action
18 "unless there is something more than the conduct required to establish the tort [of bad faith]."
19 *Id.* (citing *Rawlings*, 151 Ariz. at 161, 726 P.2d at 577). There must be "clear and convincing
20 evidence of the defendant's evil mind" in order to award punitive damages. *Id.* "The
21 requisite 'something more,' or 'evil mind,' is established by evidence that [the insurer] either
22 (1) 'intended to injure the plaintiff ... [or (2) ] consciously pursued a course of conduct
23 knowing that it created a substantial risk of significant harm to others.'" *Gurule v. Ill. Mut.
24 Life & Cas. Co.*, 152 Ariz. 600, 602, 734 P.2d 85, 87 (citing *Rawlings*, 151 Ariz. at 162, 726
25 P.2d at 578). Punitive damages are "only to be awarded in the most egregious of cases,
26 where there is reprehensible conduct combined with an evil mind over and above that
27 required for the commission of a tort[.]" *Linthicum*, 150 Ariz. at 332, 723 P.2d at 681.

The Taylors have not established that USAA knowingly acted unreasonably toward them or acted with a reckless disregard toward the reasonableness of its actions. There is therefore insufficient evidence to establish that USAA even committed the tort of bad faith, let alone evidence of the "something more" or clear and convincing evidence of an "evil mind" that is required for an award of punitive damages. *Id.*; *see also Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 733 P.2d 1073, 1080 (1987) ("Punitive damages are recoverable in insurance bad faith tort actions only if the insured acted with an 'evil mind' in breaching the implied covenant of good faith and fair dealing."). Because the Court will grant USAA's motion for summary judgment on the Taylors' bad faith claim—the only claim for which punitive damages are available—the Taylors accordingly cannot recover punitive damages. USAA's motion for summary judgment (Doc. 50) will thus also be granted as to the Taylors' claim for punitive damages.

IT IS ORDERED that Defendant's Motion for Partial Summary Judgment (Doc. 50) is granted.

DATED this 4th day of April, 2011.

_____
Neil V. Wake
United States District Judge